**NATIONAL MUT. CASUALTY CO. OF TULSA, OKL., v. EISENHOWER.**

No. 2182.

United States Circuit Court of Appeals, Tenth Circuit.

Dec. 30, 1940.

E. S. Hampton, of Salina, Kan. (C. W. Burch, B. I. Litowich, La Rue Royce, L. E. Clevenger, and R. E. Haggart, all of Salina, Kan., on the brief), for appellant.

Matt Guilfoyle, of Abilene, Kan. (Thornton D. Scott, of Abilene, Kan., on the brief), for appellee.

Before BRATTON and MURRAH, Circuit Judges, and KENNAMER, District Judge.

FRANKLIN E. KENNAMER, District Judge.

This action was instituted by a mother, for the recovery of damages for the wrongful death of her 18-year old son. The automobile in which the deceased was riding, collided with a fuel transport truck as the truck had crossed a narrow bridge, and immediately before deceased's automobile had approached the bridge.

Robert Eisenhower, while driving an automobile, accompanied by a younger brother, occupying the front seat with him, and his two sisters and a cousin in the back seat, collided with the truck traveling in an opposite direction, and a portion of the truck was torn loose and driven through the body of Robert Eisenhower, which resulted in his death within a few hours. The truck was driven by an employee of H. A. Friesen, doing business as Jansen Oil Company, Jansen, Nebraska, and was insured, as required by the Kansas Statutes, under a policy issued by the defendant insurance company. The case was tried to the court without a jury. A motion for directed verdict, interposed by the defendant insurance company upon the conclusion of plaintiff's case in chief, was overruled, and thereafter witnesses were presented by the defendant. At the conclusion of the testimony, defendant insurance company moved for judgment, which was overruled, and thereafter filed its motion to set aside findings of fact and conclusions of law, and a motion for new trial, both of which were denied. Judgment was entered for the plaintiff for the sum of $4,277.25, and the defendant insurance company has brought the case here for review.

It is contended that the court erred in overruling the defendant's motion for directed verdict and judgment, for the reason that the decedent was guilty of contributory negligence, if not negligence, which was the proximate cause of the collision. The question is whether there was substantial evidence tending to show that the driver of the truck involved in the collision was guilty of primary negligence, which proximately caused the injuries from which the deceased died, and whether there was substantial evidence showing that the deceased, either contributed to or proximately caused his injury and resulting death, by his own negligence.

The evidence will be briefly reviewed. The deceased was an 18-year old son of a widowed mother, having graduated from high school the spring preceding his death. He was driving the family car, a 1929 model, south on Kansas state highway number 15, and at a point some 2 miles north of Hillsboro, Kansas, he approached a bridge about 34 feet long and 14 feet wide. Railings were on the two sides of the bridge, and the bridge was over to the west side of the road, so that anyone traveling in the direction in which the deceased was proceeding, could continue straight forward, while a vehicle approaching the bridge from the north, is required to incline to the left in order to cross the bridge. The truck in question was approaching from the north, and the deceased retarded the speed at which he was traveling, and the truck also appeared to the witnesses to slow down. Both apparently came on, the truck traveling at a rate of speed of from 35 to 40 miles per hour, while the deceased was attempting to stop his car, and at the time of the impact his car was traveling about 5 miles per hour. The speed of the truck was not retarded until the moment of the impact, or shortly thereafter. The deceased's automobile was as far to the right as it was possible to drive the same, and the truck was driven near the railing of the bridge. Regulation warnings of the State Highway Commission were stationed 300 feet on each side of the bridge, warning travelers of the narrow bridge. The truck stopped 54 feet north of the point of collision. Several witnesses testified with respect to the brakes upon deceased's automobile, three testifying that the brakes were adequate, and the defendant submitting two garage mechanics who examined brake linings removed from deceased's automobile after the collision, as well as admissions of deceased's sister, that the car was without brakes.

■ There is little question but that the evidence showed substantial negligence proximately causing the injuries from which the deceased died. Appellant refers to the case as one involving two vehicles

approaching a narrow bridge from opposite directions, each trying to beat the other across it, and stated that both drivers were negligent; contending that recovery should have been denied because of contributory negligence. Aside from the admissions of the deceased's sister, in a statement given an insurance adjuster, that the car was without adequate brakes, there was no substantial evidence of negligence of the deceased presented prior to the motion of the defendant for a directed verdict and for judgment. Plaintiff's evidence showed that the brakes had been O.K.'d, which is explained as an approval upon test by the Highway Patrol, and that the brakes had been adequate and satisfactory a short time prior to the accident.

■ Contributory negligence may be a mixed question of law and fact; the entire case was submitted to the trial court. We cannot say that he committed error in denying the motion for a directed verdict and judgment. The court should direct a verdict where the evidence is without dispute, or if conflicting, is of such a conclusive nature as to permit no serious dispute. See, A. B. Small Company v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Rouse v. Burnham, 10 Cir., 51 F.2d 709; Murray Co. v. Harrill, 10 Cir., 51 F.2d 883; Central Surety & Insurance Corporation v. Murphy, 10 Cir., 103 F.2d 117. Contradictions and conflicts of evidence are for the trier of the facts, whether it be court or jury, and where the evidence and the inferences fairly deducible from it are such that reasonable minds may honestly draw different conclusions from them, it has been held by this court that the question is not one of law, but of fact, to be determined by the trier of the facts. See, Central Surety & Ins. Corporation v. Murphy, supra, and cases therein cited.

■ In light of the above, we shall consider the alleged error of the trial court in denying and refusing requested findings, and in adopting findings upon which judgment was entered. A finding was requested to the effect that the brakes on the deceased's car were worn and in bad condition, and that the deceased had knowledge of the condition of the brakes, as well as that the deceased had made other trips over the same road, and had driven the car quite a bit, and further, that the truck got to the bridge and crossed it first.

The evidence was in conflict as to the condition of the brakes upon the deceased's car. Reasonable minds could honestly reach different conclusions upon the question. It cannot be said that the court properly should have found that the brakes on deceased's car were worn and in bad condition, as substantial evidence is contained in the record negativing such a finding.

■ We deem it unimportant for the trial court to have refused to find that the truck reached or got to the bridge first and crossed it first, employing the language contained in the requested finding, for the reason that the bridge was about 34 feet long, the approximate length of an ordinary fuel transport truck, and 14 feet in width. It is contended by appellant that the truck had the right-of-way by reason of its having reached the bridge first, and that the deceased should have stopped and permitted the truck to proceed across, relying upon Huddy Automobile Law, 3-4 § 119, p. 193; Short v. Robinson, 280 Ky. 707, 134 S.W.2d 594; Universal Truck Loading Co. v. Taylor, 174 Miss. 353, 164 So. 3, and Pope-Cawood Lbr. & Supply Co. v. Cleet, 236 Ky. 366, 33 S.W.2d 360; Maritzky v. Chadick-Hayes Co., 12 La.App. 104, 124 So. 566. We believe the above rule properly should be applied to a large bridge, and we cannot say that the principle does not apply to a narrow bridge. However, an exception must be made to the rule in a case where the operator of a vehicle races to beat another vehicle across such a bridge. Such a principle of law is applicable to reasonable and prudent operation of motor vehicles; it must not constitute any reason for a contest or race to such a bridge in order to create a right-of-way over the same. Another significant fact is that the driver of the truck was compelled to veer to the left in order to cross the narrow bridge, which should have been a sufficient warning to him to retard the speed of his truck in order to have avoided a collision.

The findings adopted by the trial court, upon which a reversal is sought, are with respect to the bridge being off-center and located more on the side of the road occupied by the deceased, than on the truck side thereof; acquitting the deceased of contributory negligence; finding that the Ford car was practically stopped at the north edge of the bridge, and the finding narrating the earning ability of the de-

ceased. We have heretofore briefly narrated the evidence, and have concluded that the trial court's findings are supported by substantial evidence.

█ It is further insisted that error was committed by the trial court refusing to continue the trial of the case until the appellant could obtain depositions of three absent witnesses. After the trial had commenced and plaintiff's opening statement had been completed, the defendant, in its opening statement, advised the court that two witnesses had removed from the State of Kansas to California, and they asked leave to take depositions. No ruling was made upon the oral application, and after the defendant had submitted the testimony of its witnesses, counsel for the insurance company advised the court that he had arranged for the truck driver being present to testify in the trial of the case. He also announced that two witnesses had removed from Kansas to California about 10 months prior to the trial, but counsel did not discover the same until a night or two before the trial. No effort was made to take depositions, and no written application was made for a continuance. Statements of the witnesses who had gone to California are contained in the record, and a statement is contained in the record as to what the testimony of the truck driver would have been had he been present. Since it all is included in the record, we must assume that it had the consideration of the trial court. Some of the evidence is merely corroborative of testimony introduced; other statements contained therein conflict with plaintiff's evidence, particularly the rate of speed at which the truck was being operated, as it is submitted that the truck driver would testify that the truck was traveling 30 miles per hour, in place of 35 or 40. We cannot say that the trial court, as trier of the facts, would have reached a different conclusion if the absent witnesses had testified to facts set forth in their statements, and if they had so testified, it would not detract from the fact that the judgment is supported by substantial evidence.

█ It is next contended that error was committed in overruling the defendant insurance company's motion for new trial. The matters presented in support of this contention, have been considered elsewhere in this opinion. Two reasons, in addition to issues heretofore discussed, are urged,— one being that the trial court tacitly permitted the defendant to enter the trial with the assumption that depositions of the nonresident witnesses would be taken and considered. We do not think that there is any merit to this contention, for the obvious reason that the defendant entered the trial of the case before announcing that witnesses were absent; too, we assume that the statements of the absent witnesses were considered by the trial court, as they constitute a part of the record before this court.

█ Another reason assigned, is that the trial court attentively received the testimony of plaintiff and her witnesses, while cross-examination of such witnesses was discouraged, and the witnesses for the defendant were discredited, the trial court having cross-examined some of the defendant's witnesses. A trial court should receive the evidence of all litigants attentively and impartially; there is no impropriety in a trial judge examining or cross-examining witnesses, provided the litigants are not deprived of their opportunity to examine and cross-examine the same witnesses. There is nothing in the record to indicate that defendant was deprived of an opportunity to either examine or cross-examine the witnesses. The trial court saw the witnesses and heard them testify. He being the trier of the facts, he must be the sole judge of the credibility of such witnesses.

█ The only other question involved is the plaintiff's right to recover the amount of the judgment. The parties stipulated the amount of the funeral expenses to be $277.25, about which there can be no controversy. The trial court found that by reason of the wrongful death of Robert Eisenhower, the mother had been deprived of his support, and the plaintiff, as administratrix of his estate, should be compensated therefor in the sum of $4,000. Appellant contends that the sum is excessive. The evidence showed that the deceased was a strong, rugged boy, weighing about 190 pounds, being 18 years of age. He was industrious and cut wood on shares, supplying his widowed mother and brothers and sisters with their fuel requirements; that he had acquired a herd of goats, and was not only supplying the family with all the milk they needed, but was also producing some income from the

896

sale of milk to others; that he had worked for farmers in the neighborhood during summer vacations, and had brought all of his earnings home and given them to his mother; that his mother had a contract for carrying the mail, for which she received $14.50 per month, and that Robert drove the automobile for her and enabled her to earn that sum; that he graduated from high school in May, 1938, and was killed about 8 months later. The evidence clearly shows that the deceased was contributing financially to his widowed mother, and there is nothing to show that he would not have contributed to her support after attaining his majority. Recovery in the instant case is based upon compensatory damages; it is difficult to exactly determine the amount thereof, and latitude must be afforded the trier of facts in each case, in order to determine the amount. In Bradshaw v. Payne, 111 Kan. 475, 476, 207 P. 802, recovery for the death of a 17-year old boy was sustained in the amount of $1,500, for his probable earnings from the time of his death until he reached 21 years of age, and $5,000 as compensation for loss of contributions to the parents after his majority. A verdict of $6,305 was held not excessive for the death of a girl 7 or 8 years of age. See, Briley v. Nussbaum, 122 Kan. 438, 252 P. 223. See, also, Webb v. City of Oswego, 149 Kan. 156, 86 P.2d 553. The elements which go to make up compensation for the value of the life taken away, are personal to each case. Kansas Pacific Railway Co. v. Cutter, 19 Kan. 83. The record affirmatively shows that the deceased was contributing financially to his widowed mother, and that she relied upon him for such assistance. There is nothing in the record to indicate that the deceased would not have contributed to his mother after attaining his majority. Appellant argues that because an older brother had not helped his mother since he moved away, because he was of age, that the deceased could not have been expected to contribute to her. We do not see that the conduct of one brother is at all controlling, and neither can we discern any probability that the deceased would not have contributed to his mother, merely because an older brother had removed from her home and had ceased to contribute to her.

We are of the opinion that no substantial error was committed by the trial court. The judgment is affirmed.